**Affirmed and Memorandum Opinion filed May 18, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00611-CR

## JORDAN JAML ALVARADO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1599201**

## MEMORANDUM OPINION

A jury convicted appellant Jordan Jaml Alvarado of the first-degree felony of murder in 2021. Tex. Penal Code Ann. § 19.02(b). Appellant pleaded true to two previous convictions for burglary of a habitation and felon in possession of a weapon. The trial court assessed punishment at imprisonment for 45 years. Tex. Penal Code Ann. § 12.32(a). In his sole issue on appeal, appellant challenges his conviction, arguing the evidence is legally insufficient to support his conviction because no rational juror could have rejected his claim of self-defense. We affirm.

# I.  BACKGROUND

Shelby Fonseca was involved in an altercation at the apartment complex where her mother lived in July 2018. The police were called and because Shelby was then a minor and her mother was unavailable, Shelby's father, Keith Johnson, drove out with his girlfriend to the apartment complex located in the Spring Branch area of Harris County to release her from police custody.

Appellant, who is Shelby's maternal uncle, was also present. Keith was a long-time family friend who had close relationships with members of appellant's family.[1] After the police left, appellant began arguing with one of Shelby's friends and the two began physically fighting. Shelby called for her father's help and Keith intervened in the altercation and then began fighting with appellant.

The fight between appellant and Keith lasted for several minutes and was witnessed by several members of Shelby's family, including appellant's brother, Bobby Alvarado, and sister, Shantell Johnson, as well as Shelby and a neighbor sitting on her balcony. While accounts describing the fight vary, it is undisputed that Keith had the upper hand in the fight. Some of appellant's family members describe the two men as both landing strikes on each other. Other accounts suggest that appellant was hit in the head several times and was pushed up against a wall and choked with Keith's arm.

It is unclear why the fight ended, although by most accounts it ended suddenly with appellant running away. Keith returned with Shelby's family to her mother's apartment. Appellant ran off to a nearby apartment where he was staying with his girlfriend. Appellant's brother and Shelby both testified they thought the fight was over and everyone was returning to her mother's apartment to calm

---

[1] Because many of the witnesses are related to appellant and several have the same last name, we refer to the witnesses by their first names.

down. Keith had been wearing sandals when he arrived at the apartment complex and began looking for tennis shoes to wear. While Shelby's family gathered in the apartment, Keith went down to his car to look for shoes. His girlfriend, Velesia Washington, followed. Velesia passed appellant while looking for Keith and described appellant as "angry" though she did not see a gun on him at that point. Shortly thereafter, Velesia heard a gunshot.

Appellant found Keith outside in the parking area of the apartment complex. A neighbor who observed the altercation testified that appellant pulled out a gun and shot Keith from several feet away. A visitor to the apartment complex also saw the shooting and testified that Keith had his hands up in response to the gun and was attempting to de-escalate the situation. Velesia did not see the shooting but found Keith on the ground and ran to alert Shelby's family. Shelby and appellant's brother, Bobby, testified that they encountered appellant on their way to find Keith. Shelby and Bobby both testified that appellant pointed his gun at them as he ran towards the exit of the apartment complex. Appellant fled the scene and was arrested later.

## II. ANALYSIS

### A. Sufficiency of the evidence

Appellant does not challenge the sufficiency of the evidence supporting the jury's finding that he (1) intentionally or knowingly caused Keith's death or (2) intended to cause serious bodily injury and intentionally or knowingly committed an act clearly dangerous to human life that caused Keith's death. Tex. Penal Code Ann. § 19.02(b)(1), (2). Rather, he asserts there was no evidence supporting the jury's rejection of his claim of self-defense.

3

## 1. Applicable law

The Penal Code provides that deadly force used in self-defense or in defense of another is a defense to prosecution for murder if that use of force is "justified." *See* Tex. Penal Code Ann. §§ 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter."), 9.31–.33 (setting forth substantive requirements for establishing claim of self-defense or defense of third person).

Penal Code section 9.31 provides that, subject to certain exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a). The use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(b). A "reasonable belief" in this context is defined as "one that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code Ann. § 1.07(a)(42).

A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31, and (2) "when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force, or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." Tex. Penal Code Ann. § 9.32(a).

## 2. Standard of review

The due-process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *Braughton v. State*, 569

S.W.3d 592, 607 (Tex. Crim. App. 2018); *see also Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see also Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Specific to self-defense, the court of criminal appeals has explained that the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton*, 569 S.W.3d at 608. We look not to whether the State presented evidence that refuted appellant's self-defense evidence, but to whether after viewing all the evidence in the light most favorable to the prosecution, any rational factfinder would have found the essential elements of murder beyond a reasonable doubt and would have found against appellant on the self-defense issue beyond a reasonable doubt. *Id.* at 609 (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)).

The reviewing court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899–900. Self-defense is a fact issue to be determined by the jury and the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14.

### 3. Jury's rejection of self-defense was supported by legally sufficient evidence

Appellant's claim of self-defense rests primarily on the testimony of a neighbor who saw the shooting and testified that appellant appeared scared and "was trying to defend himself." Appellant argues he was injured in the fight and shot Keith when Keith advanced towards him to continue the fight. Therefore, appellant argues no rational jury could have rejected his claim of self-defense. We disagree.

Appellant's argument omits discussion of other witness testimony at trial. Further, the neighbor's testimony established that appellant appeared surprised when he came across Keith a second time and that he shot Keith when Keith stepped towards him. However, the neighbor's testimony did not establish that appellant had a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Keith.

This neighbor saw both the fight and the shooting from the vantage point of her balcony. The neighbor was familiar with appellant and believed he lived in their apartment complex. During the fight, the neighbor testified she saw appellant get hit in the head repeatedly and choked until a third individual broke up the fight.[2] She saw Keith looking for something in two different vehicles, but she testified that she did not believe he found what he was looking for and she never saw a weapon in his hands. After several minutes, she saw appellant and Keith come across each other again after they came around a corner. Although she initially described Keith as trying to "chase" appellant, she explained that she saw Keith take a step forward or walk towards appellant. Once Keith took a step

---

[2] This detail varies from other witnesses who describe the fight as spontaneously breaking up with appellant running away.

forward, she testified that appellant pulled a gun out of his pocket and shot Keith. Although this neighbor testified that she thought appellant was scared because she saw him "jump," she further testified appellant looked scared from the end of the fight through the shooting. Finally, the neighbor also testified that appellant just turned around and walked away after he shot Keith.

There was also testimony from a visitor to the apartment complex who drove in and saw Keith pacing alone on a sidewalk attempting to calm down. When the visitor got out of her car, she heard someone say "Hey, what are you doing with that?" She described turning around to see Keith with his hands up looking terrified. She then said Keith appeared to try to speak calmly to appellant and de-escalate the situation before appellant shot him.

The jury charge, in accordance with the Penal Code, provided instructions to the jury on self-defense that if:[3]

> it reasonably appeared to the [appellant] that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Keith Johnson, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Keith Johnson's use or attempted use of unlawful deadly force, he shot Keith Johnson, then you should acquit the defendant on the grounds of self-defense.

Appellant therefore had the burden to offer evidence that he reasonably believed that deadly force was immediately necessary to protect himself against Keith's use or attempted use of unlawful deadly force. Although there had been a fight between Keith and appellant approximately ten minutes before the shooting, there is no evidence in the record that Keith followed appellant to his apartment to

---

[3] No objections to the jury charge were raised in the trial court, and appellant does not attempt to challenge the charge on appeal.

continue the fight. At the time of the shooting, testimony established there was no contact between the men and they were at least several feet away from each other. The testimony is also undisputed that Keith was unarmed but appellant carried a weapon at the time of the shooting. Therefore, there was no evidence of a threat of imminent, physical, serious bodily injury to appellant.

We conclude there was legally sufficient evidence supporting the jury's rejection of appellant's claim of self-defense and overrule appellant's sole issue on appeal.

### III.   CONCLUSION

We affirm the trial court's judgment as challenged on appeal.


/s/     Charles A. Spain
Justice

Panel consists of Justices Spain, Poissant, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).